IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID KELSO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-961-B |
| | § | |
| HENRY M. PAULSON, JR., Secretary | § | |
| of the Treasury, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's orders of reference, before the Court are the *Amended Motion of the Secretary for Partial Summary Judgment and for Partial Dismissal Under Rule 12(b)(6)*, filed March 5, 2010 (doc.47), and *Defendant's Motion to Strike Exhibits to Plaintiff's Response to Defendant's Amended Motion for Partial Summary Judgment and for Partial Dismissal Under Rule 12(b)(6) with Memorandum Brief*, filed April 8, 2010 (doc. 56).   Based on the relevant filings, evidence,[1] and applicable law, Defendant's motion to dismiss should be converted to a motion for summary judgment and summary judgment should be **GRANTED** on all claims.   The motion to strike evidence is **GRANTED**.

## I.  BACKGROUND[2]

On June 6, 2008, Plaintiff David Kelso ("Plaintiff") filed this *pro se* suit under Title VII of

---

[1]Defendant submitted an appendix in support of his reply but did not seek leave to file new evidence. Because Plaintiff did not have a meaningful opportunity to respond, the reply appendix has not been considered.  *See Spring Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.) ("where a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them").

[2] The factual background is mostly taken from the final agency decision on Plaintiff's 2002 EEO complaint in Defendant's appendix ("D. App.").

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., alleging race and disability discrimination and retaliation. He seeks a declaratory injunction as to his rights and a permanent injunction to restrain "defendant from maintaining a policy, practice, custom, or usage of discriminating against" him because of race and disability.

Plaintiff is a customer service representative for the Internal Revenue Service ("IRS"), Department of the Treasury, who answers telephone calls from taxpayers about tax-related issues. (D. App. at 75). In March 2001, he underwent surgery on his spinal cord and neck due to a work-related injury and was unable to work for a year. (D. App. at 13). He returned to work in March 2002 upon his doctor's prescription that he be allowed to stand up every thirty minutes to stretch and relieve pressure on his upper back, for at least thirty days. *Id.* In April 2002, the doctor extended his prescription to eight to twelve months. *Id.* In June 2002, he prescribed that Plaintiff be allowed to stand up and stretch every thirty to forty minutes. *Id.* In October 2006, he reiterated Plaintiff's need to stand up and stretch every thirty minutes and raised the possibility that pain medication could make him prone to frequent absenteeism. *Id.*

From August 2002 to December 2002, Plaintiff's supervisors charged him several hours of absence without leave ("AWOL") on various grounds, including his failure to follow appropriate procedures for requesting leave. (D. App. at 13-14). On November 27, 2002, Plaintiff notified Ted Reis, his second line supervisor, that he had taken several prescription drugs, and requested and received four hours of leave without pay ("LWOP"). (D. App. at 12, 14). On December 2, 2002, Reis provided Plaintiff some internet information about his prescription drugs and asked him if he was addicted. *Id.* Later that day, he told Plaintiff to stay out of a co-worker's area. (D. App. at 14). The following day, he asked Plaintiff to return the information on prescription drugs, and upon his

refusal to do so, got upset, raised his voice, and threatened Plaintiff with insubordination.  *Id.*  On December 17, 2002, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEO complaint") alleging discrimination and retaliation.  (D. App. at 17).

In January 2003, Plaintiff faced the option to participate in an Alternate Discipline Program or be suspended for AWOL charges.  *Id.*  Plaintiff elected not to participate and received a proposal for a three-day suspension that was subsequently withdrawn, but later reissued.  (D. App. at 14-15).  The following month, Plaintiff requested reasonable accommodation in the form of frequent breaks, occasional extended breaks, liberal leave, LWOP, and permission to occasionally lie down to relieve his pain.  (D. App. at 15).  Norma Brudwick, his third level supervisor, approved his request and provided him with a chair to support his back and a long telephone cord for him to get up, stretch, and walk around.  *Id.*  She also approved an alternate work schedule ("AWS").  (D. App. at 12, 15).  Under the AWS, Plaintiff could take breaks to relieve his pain but had to inform his manager personally each time he needed one.  (D. App. at 15).  He had to report directly to the health clinic, and upon his return, to his supervisor.  *Id.*  If his supervisor was not around, he could go to a buddy or the department manager for permission to leave.  *Id.*  He could not leave the building while off the clock, and his time sheets had to accurately reflect his activities.  *Id.*  Plaintiff would be charged AWOL if he did not follow the outlined procedures.  *Id.*

On May 13, 2003, Plaintiff received five notices of AWOL for failure to follow leave procedures.  *Id.*  The following day, when Plaintiff went to Reis' office to inquire about the notices, Reis stated that William Morris, Plaintiff's immediate supervisor, would verify the notices after he returned from vacation.  (D. App. at 12, 15).  Plaintiff responded that "this [was] ridiculous" and Reis told him to "get out."  (D. App. at 15).  That same month Brudwick suspended Plaintiff without

pay for three days.  (D. App. at 16).  Plaintiff was also charged AWOL for nine days because even though he had provided a doctor's note stating that he would be away from work due to hypertension, the note had not specified that he was incapacitated.  *Id.*  In August 2009, Plaintiff was again suspended for three days without pay on grounds of unprofessional conduct towards Reis.  *Id.*

In August 2003, Plaintiff amended his December 2002 EEO complaint and alleged discrimination on the basis of sex, race, and disability, as well as retaliation.  An administrative law judge ("ALJ") held a hearing on January 26, 2005, and on August 17, 2005, he issued a written decision finding no discrimination or retaliation.  (D. App. at 9-28).  On September 2, 2005, the IRS issued its final decision.  (D. App. at 29-32).  Plaintiff did not appeal that decision.

On January 9, 2007, Plaintiff filed a second EEO complaint alleging discrimination on the basis of disability and retaliation for his prior EEO activity.  On March 13, 2007, Plaintiff amended his complaint.  After Plaintiff waived his right to a hearing, the IRS issued its final agency decision finding no discrimination or retaliation.  The EEOC affirmed the agency's final decision and denied Plaintiff's request for reconsideration of its decision.

Plaintiff then filed suit in this Court.  He alleges that the circumstances leading to his claims occurred on or about January 10, 2002, while he was recuperating from his injury and the subsequent surgery.  He also alleged that his supervisors took several discriminatory actions against him – manager Stephanie Bowman attempted to lower his performance appraisal in violation of the National Labor Agreement; Paulette Rector, another manager routinely issued AWOL from May 2002 to June 2004; Reis altered his time sheets, ignored medical documentation, locked Plaintiff in his office, and fabricated documents leading to Plaintiff's suspension; and Norma Brudwick and several other managers violated the National Labor agreement and the April 2003 letter approving

his request for reasonable accommodations.  He further alleged that his work had been "subjected to closer scrutiny and or reprisal" since his EEO activity.

On April 9, 2009, the Court dismissed Plaintiff's racial discrimination claim for lack of subject matter jurisdiction.  (*See* doc. 18).  On January 8, 2010, Defendant filed this motion to dismiss Plaintiff's remaining claims under Rule 12(b)(6), in part, and under Rule 56, in part. Plaintiff and Defendant filed their response and reply, respectively, and Defendant moved to strike exhibits attached to Plaintiff's response.  The motions are now ripe for consideration.

## II.  MOTION TO STRIKE

Defendant moves to strike Exhibits 1-5A and 6-8 attached to Plaintiff's response on grounds that the exhibits are unauthenticated and therefore inadmissible as evidence.  (Mot. at 1-2).

Under Fed. R. Evid. 901(a), authentication or identification is a condition precedent to admissibility.  Rule 901 does not require conclusive proof of authenticity; it merely requires some evidence sufficient to support a finding that the evidence in question is what the proponent claims it to be.  *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993).  Some types of evidence are self-authenticating and require no extrinsic foundation for admission.  *McIntosh v. Partridge*, 540 F.3d 315, 322 n. 6 (5th Cir. 2008).  Fed. R. Evid. 902 sets out the requirements for such self-authenticating documents.  *Id.*

Here, Exhibits 1A, 1B, 3, 4, 5A, and 6 appear to be internal memoranda by the IRS explaining the reasons for charging Plaintiff AWOL.  Exhibits 4B-E and 6C appear to be AWOL notices.  Exhibit 6A appears to be a memorandum reporting Plaintiff's failure to show up to class on time.  Exhibit 6B appears to be a request for leave by Plaintiff.  Exhibit 6D appears to be a notice denying Plaintiff's request to work overtime due to AWOL charges against him.  Exhibits 3A, 7A,

7C, 7D, and 7E appear to be medical documents certifying Plaintiff's inability to work on days he was absent. Exhibits 7, 7B, 7F, and 7G appear to be notices of possible action against Plaintiff. Exhibits 8 and 8A appear to be Plaintiff's performance evaluations by the IRS for the years 2003-2004 and 2005-2006. Exhibits 8B-D appear to be a grievance regarding Plaintiff's 2008 performance appraisal. It is difficult to classify Exhibits 2, 4A, 4G, and 5.

Exhibits 1-5A and 6-8 are not self-authenticating documents. Additionally, Plaintiff does not present any evidence, such as an affidavit, to establish that the submitted exhibits are true copies of what they purport to be. Although some of the exhibits appear to be Defendant's, this is insufficient circumstantial evidence of authenticity since Plaintiff offered nothing to inform the court of the circumstances surrounding their discovery. *Arce*, 997 F.2d at 1128 (citing *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). Since Plaintiff has failed to authenticate his exhibits, Defendant's objections to Plaintiff's Exhibits 1-5A and 6-8 are **SUSTAINED,** and the motion to strike these exhibits is **GRANTED**.[3]

### III.   MOTION TO DISMISS

Pursuant to Fed. R. of Civ. P. 12(b)(6), Defendant moves to dismiss discrimination claims against Bowman, Rector, Reis, and Brudwick on *res judicata* grounds.

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190,

---

[3] Consideration of the evidence would not change the recommendation. The AWOL notices and the medical authorization forms by themselves do not show what procedures Plaintiff needed to follow to request leave and whether those procedures were followed. The performance evaluations, even if authentic, are not sufficient evidence of an adverse action. *See infra*. Additionally, most of the evidence relates to the time period before Plaintiff filed and amended his first EEO complaint.

196 (5th Cir. 1996).  In the 12(b)(6) context, pleadings include attachments to the complaint.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his or] her claim."  *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

When a party presents "matters outside the pleading" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 & n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. App'x 775, 783 (5th Cir. 2007).  However, "[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56", and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

Here, Defendant has attached to its motion a final agency decision on Plaintiff's 2002 EEO complaint, and a transcript of an administrative hearing concerning that complaint.  (*See* D. App. at 5-25, 33-46).  Plaintiff neither attached these documents to, nor specifically referred to them in, his complaint.  Additionally, Defendant has not alleged or shown that these submissions are a matter of public record subject to judicial notice.  These documents constitute matters outside the pleadings, and the Court cannot consider them without converting the motion to dismiss into one

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 539 (5th Cir. 2003) (holding that district court should have converted a motion to dismiss to a motion for summary judgment before considering the evidence submitted in support of the motion to dismiss). Because the Court's consideration of the attached documents is likely to facilitate the disposition of the case, it exercises its complete discretion to accept them. Consequently, Defendants' motion to dismiss is converted to one for summary judgment under Rule 56.

The parties will be provided with the procedural safeguards for Rule 56 motions. *See* Fed. R. Civ. P. 12(d). Rule 56 provides that a summary judgment motion must be served at least ten days prior to a hearing. The fourteen-day period for objection to this recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) provides the parties the requisite notice that the Court has accepted matters outside the pleadings for consideration and that the motion to dismiss is therefore being considered as a motion for summary judgment. *See Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir.1990).

## IV. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no

genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evi-

dence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465

F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.

1998)).  Instead, a party opposing summary judgment must "identify specific evidence in the record"

that supports the challenged claims and "articulate the precise manner in which that evidence

supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537

(5th Cir. 1994)).

## A.    **Disability-Based Discrimination Claims**

### 1.    **Claims Raised in Plaintiff's First EEO Complaint**

Defendant moves to dismiss Plaintiff's disability discrimination claims that are based on the

conduct of Bowman, Rector, Reis, and Brudwick on grounds of *res judicata*.  (Mot. Br. at 12).

These claims are that Bowman attempted to lower his annual performance appraisal in violation of

the National labor agreement; Rector routinely issued AWOL in violation of the National labor

Agreement; Reis altered Plaintiff's time sheets, ignored medical documentation, locked Plaintiff in

his office, and fabricated documents which led to Plaintiff's suspension; and Brudwick violated the

National Labor Agreement as well as the National Labor Agreement.

"Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated

or should have been raised in an earlier lawsuit."  *Test Masters. Edu. Servs., Inc. v. Singh*, 428 F.3d

559, 571 (5th Cir. 2005).   For a claim to be barred by *res judicata*, (1) the parties in the two actions

must be identical; (2) the prior judgment must have been rendered by a court of competent

jurisdiction; (3) there must be a final judgment on the merits; and (4) the two actions must involve

the same claim or cause of action.  *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir.

2009). For purposes of the second element, a federal administrative agency acting in a judicial

capacity is considered a court of competent jurisdiction.  *See Astoria Fed Sav. & Loan Ass'n v. Solimino*, 504 U.S. 104, 107-08 (1991).  With respect to the third element, an agency decision from which an appeal has not been taken is considered a final judgment.  *See Gibson v. USPS*, 380 F.3d 886, 889 (5th Cir. 2004).  As to the fourth element, the critical issue is whether the two actions are based on the "same nucleus of operative facts," i.e. "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to parties' expectations or business understanding or usage."  *Test Masters*, 428 F.3d at 57.  If the four elements of *res judicata* are established, the judgment in the first action serves as an absolute bar to the subsequent action with respect to every matter actually offered and received and as to every ground that might have been presented.  *Nagle v. Lee*, 807 F.3d 435, 439 (5th Cir. 1987).

Here, the first three elements of *res judicata* are undisputed: the two actions involve Plaintiff and the Secretary of Treasury as parties; the first EEO complaint was adjudicated by the EEO division of the IRS, which is a federal administrative agency acting in a judicial capacity; and Plaintiff did not appeal the final agency decision, therefore making it a final judgment for purposes of *res judicata*.  As to the fourth element, Defendant contends that the factual allegations in Plaintiff's complaint related to Bowman, Rector, Reis, and Brudwick were either raised or could have been raised in his first EEO complaint and should not be considered a basis for this lawsuit. (*See* Mot. Br. at 11-14).  Defendant provides evidence that Plaintiff amended his first EEO complaint in 2004.  (See Mot. Br. at 13, citing 5-25).  He also provides evidence that the four individuals were not in Plaintiff's chain of command after 2003, and therefore could not have taken the alleged discriminatory and retaliatory actions after 2003.  (*See* Mot. Br. at 13-14, citing 5-25, 34-36, 40, 42, 44-46).  Additionally, Defendant presents the final agency decision on Plaintiff's

2002 EEO complaint as evidence that the allegations concerning Rector, Reis, and Brudwick were included in his first EEO complaint. (*See* Mot. Br. at 13-14, citing D. App. at 10-14). Defendant has provided evidence showing that the disputed factual allegations were related in time and space to Plaintiff's first EEO complaint and were, or should have been, raised in that complaint. Therefore, Defendant has met his summary judgment burden to show that claims based on actions taken by the four individuals are barred by *res judicata*.

The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue of material fact that these claims are not barred by *res judicata*. *Ragas*, 136 F.3d at 458. Plaintiff has failed to address this argument in his response and therefore has not met his summary judgment burden. Defendant is entitled to summary judgment on Plaintiff's disability discrimination claims based on actions by Bowman, Rector, Reis, and Brudwick. *See Ragas*, 136 F.3d at 458; *Celotex Corp.*, 477 U.S. at 322-23.

### 2.   New Claims

Defendant also moves for summary judgment on any remaining disability-based discrimination claims by Plaintiffs. (Mot. Br. at 4-9). These claims, as stated in the original complaint, are that Kim Stewart, April Lambert, Cynthia Bonner, and Katrina Steele-Perry all violated the National Labor Agreement and the reasonable accommodation letter, and that Plaintiff's work has been subjected to closer scrutiny than it was prior to the filing of his EEO complaint.

Since Plaintiff is a federal employee alleging disability-based discrimination, his claim must be analyzed under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. *See Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (the Rehabilitation Act is the "exclusive remedy for a federal employee alleging disability-based discrimination"). Discrimination claims under the Act are governed by the

substantive standards applicable under the Americans with Disabilities Act ("ADA"). *See id.*; 29 U.S.C. § 794(d); *Pinkerton v. Spellings*, 529 F.3d 513, 516 (5th Cir. 2008). An employee alleging disability-based discrimination may bring her claim pursuant to § 501 or § 504 of the Rehabilitation Act. *See* 29 U.S.C. §§ 791 & 794; *Pinkerton*, 529 F.3d at 515. To establish discrimination under § 504, the employee must demonstrate that (1) he is an individual with a disability, (2) he is otherwise qualified, (3) he worked for a program or activity receiving federal financial assistance, and (4) an adverse employment decision was made solely by reason of his disability. *See* 29 U.S.C. 794(a); *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993);*Washburn v. Harvey*, 504 F.3d 505, 508-09 (5th Cir. 2007); *McKay v. Johanns*, 265 F. App'x 267, 268 (5th Cir. 2008). An employee alleging discrimination under § 501 must establish the same elements, but instead of showing that the alleged discrimination was solely by reason of his disability, he must show that disability was a motivating factor for the alleged discriminatory action. *Pinkerton*, 529 F.3d at 519.

### a.      Individual with a Disability

Defendant first challenges Plaintiff's claim that he is an individual with a disability. (Mot. Br. at 5-6). Under the Rehabilitation Act, an individual with a disability is a person who (1) has a physical or mental impairment which substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 29 U.S.C. § 705(9)(B);*Aguillard v. Mukasey*, 295 F.App'x 619, 622 (5th Cir. 2008) (citing *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 353 (5th Cir. 1997)) (quotation marks omitted). Where, as here, a plaintiff does not allege that he has a record of an impairment or that he is regarded as having such an impairment, he must demonstrate that he has a physical or mental impairment that substantially limits one or more of his major life activities. *See Aguilard*, 295 F.App'x at 622. "Major life

13

activities" include a non-exhaustive list of functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2 (i); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614 (5th Cir. 2009).

A person is substantially limited in one or more of his major life activities if he is "[u]nable to perform a major life activity that the average person in the general population can perform," or is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform the major life activity as compared to the condition, manner or duration in which the average person in the general population can perform the same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii); *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 469 (5th Cir. 2009).  In assessing whether an individual is substantially limited in a major life activity, a court should consider factors such as the nature and severity of the impairment, the duration or expected duration of the impairment, and the actual or expected permanent or long term impact of the impairment.  29 C.F.R § 1630.2(j)(2)(i)-(iii); *Chevron Phillips*, 570 F.3d at 614.[4]

Defendant first argues that "pain and medication"do not describe a physical or mental impairment.  (Mot. Br. at 5, citing D. App. at 49).  He also directs the Court's attention to a lack of evidence to show that Plaintiff's impairments, if any, substantially limited one or more of his major life activities.  (Mot. Br. at 5-6).  Plaintiff does not specify his impairments in his response or direct the Court's attention to evidence in the record sufficient for a reasonable jury to find that any impairments substantially limited one or more of his major life activities.

---

[4] The ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat 3553 (2008), makes it easier for a plaintiff to show that he is an individual with a disability.  *See Carmona v. Sw. Airlines Co.*, --- F.3d ----, 2010 WL 1614504, at *6 (5th Cir. Apr. 22, 2010).  However, the amendments  which went into effect in 2009 are not retroactive and therefore not applicable in this case.  *See id.*; *Cooper v. United Parcel Serv., Inc.*, 2010 WL 610047, at *8 (5th Cir. Feb. 22, 2010).

Defendant also argues that contrary to Plaintiff's claims, "mobility" and "alertness" are not major life activities. (Mot. Br. at 5, citing D. App. at 49). Plaintiff does not claim that his impairments substantially limit any of the major life activities listed in 29 C.F.R. § 1630.2 (i), only his "mobility" and "alertness." (*See* D. App. at 49). While the term "mobility" has been used in Rehabilitation Act cases to address the circumstances of individuals who are unable to walk or are wheelchair bound, Plaintiff has not alleged or provided evidence of an inability to walk. *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 150-51 (2d Cir. 1998). Additionally, he does not cite any authority for his proposition that "mobility" is cognizable as a major life activity under the Rehabilitation Act. *See id.*; *Amorosi v. Molino*, 2009 WL 737338, at * 5 (E.D. Pa. Mar. 19, 2009). Likewise, Plaintiff does not provide, and the Court does not find, any authority recognizing "alertness" as a major life activity for purposes of the Rehabilitation Act.

Where, as here, the non-movant bears the burden of proof, the movant's burden may be discharged by pointing out to the Court that there is an absence of evidence to support the non-movant's case. *Celotex*, 477 U.S. at 325. To defeat the motion for summary judgment, the non-movant must then direct the Court's attention to facts that support all the essential elements of his claim. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). "[I]f the non-movant fails to present sufficient facts to support an essential element of his claim, summary judgment is appropriate." *Id.* (citing *Celotex*, 477 U.S. at 322-23). Because Plaintiff has not met his burden to identify record evidence showing that he is an individual with a disability, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claims as a matter of law.

**b.    No Adverse Action**

Defendant also moves for summary judgment on Plaintiff's disability discrimination claims

15

on grounds that Plaintiff does not adequately explain what adverse action was taken against him or how it was taken. Defendant's adverse action argument is formulated around Plaintiff's allegations that his supervisors unnecessarily charged him AWOL and that they violated the National Labor Agreement and the reasonable accommodation letter. (Mot. Br. at 6-8).

      i.    <u>Placement on AWOL</u>

An adverse employment action in the discrimination context consists of ultimate employment decisions such as hiring, firing, promoting, demoting, compensating, and granting leave. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).[5] When Plaintiff was asked in an interrogatory to specify what adverse action was taken against him, he responded that Cynthia Bonner unnecessarily charged him seven days AWOL while he was hospitalized, and that April Lambert had apologized for Bonner's actions. (D. App. at 50). Defendant points out Plaintiff's failure to explain how the AWOL charges constituted an adverse action. (Mot. Br. at 6). He proffers Plaintiff's deposition testimony that he was not aware of any definitive consequences of receiving AWOL or the time at which they occur. (Mot. Br. at 6, citing D. App. at 79). He also proffers Plaintiff's admission that Lambert was successful in removing the disputed AWOL charges from his record. (Mot. Br. at 6, citing D. App. at 80). Defendant has met his initial summary judgment burden by providing evidence showing no genuine material fact issue that the alleged

_____

[5] While the Fifth Circuit has consistently limited adverse employment action in the Title VII context to acts which affect compensation, duties, and benefits, one case has questioned whether this formulation comports with the Supreme Court's standard for Title VII cases in *Burlington Northern &Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). *See McKay*, 265 F.App'x at 268-69. In *Burlington*, the Supreme Court held that the words in the substantive provisions of Title VII, such as "hire," "discharge," "compensation", and "terms, conditions, or privileges of employment" limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. *See Burlington*, 548 U.S. at 62. The Fifth Circuit has concluded that limitations similar to those in Title VII cases "apply to the similarly worded provisions of the ADA and by extension to the Rehabilitation Act." *See McKay*, 265 F.App'x at 269.

AWOL charges were an adverse action.

Plaintiff now has the burden to direct the Court's attention to evidence in the record raising such an issue.  Plaintiff argues that AWOL is a disciplinary action which leads to suspension, loss of income and possible termination, but he does not address Defendant' argument that the AWOL charges were removed from his record.  (*See* Resp.).  Plaintiff therefore has failed to meet his summary judgment burden.

ii.     National Labor Agreement

Plaintiff also alleged in his complaint that his supervisors violated the National Labor Agreement.  When asked how the alleged violations occurred, Plaintiff responded "Due to medication, physician stated may be late or unable to work.  National Labor Agreement allows 2 Hrs from start of tour to call in."  (D. App. at 52).  Defendant correctly points out that Plaintiffs response does not enlighten the Court as to what actions any of the named individuals took that violated the national labor agreement.  (Mot. Br. at 7).  He argues that even though the National Labor Agreement allows employees "two hours from the beginning of their tour of duty to call in and report that they will be late or absent that day, it does not state the procedure by which that provision is implemented."  (Mot. Br. at 7-8).  He further argues that Plaintiff does not assert to the contrary and does not assert that he followed the proper procedures for requesting leave.  (Mot. Br. at 8).  Defendant has met its burden by informing the Court that Plaintiff's allegations are insufficient to show how the National Labor Agreement was violated.

The burden now shifts to Plaintiff to identify evidence sufficient for a reasonable jury to conclude that the agreement was violated, and articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Plaintiff argues that Lambert initially approved the

seven day AWOL that Bonner issued.  However, he fails to address his own admission that the AWOL charges were subsequently removed from his record.  Plaintiff has failed to meet his burden.

### iii.   Reasonable Accommodation Letter

Plaintiff also alleges in his complaint that his supervisors violated the Reasonable Accommodation letter.  When asked to elaborate, Plaintiff responded that Bonner and Lambert made an update-request on the Reasonable Accommodation Letter, informed him that it was no longer in effect, and started charging him AWOL.  (D. App. at 49).  Defendant argues that Plaintiff fails to adequately explain how and what terms of the letter were violated, and that Plaintiff's allegation, without more, is not enough to show that his supervisors violated the reasonable accommodation letter.  Defendant has therefore met his initial summary judgment burden.

The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue of material fact that the letter was violated.  In his response, Plaintiff does not provide additional arguments or evidence to support his allegation that his supervisors violated the terms of the reasonable accommodation letter.  Consequently, Plaintiff has failed to meet his burden.

In sum, summary judgment should be granted in Defendant's favor for Plaintiff's failure to raise a genuine material fact as to the adverse action element of his claim.

### c.   **No Motivating Factor**

Defendant also moves for summary judgment on grounds that Plaintiff does not explain why his disability, if any, was a motivating factor in the alleged adverse action.[6]  (Mot. Br. at 4-9).  He

---

[6] As stated earlier, the motivating factor analysis is applicable only in claims brought under § 501 of the Rehabilitation Act.  However, because the motivating factor standard for § 501 claims is easier to meet than the sole factor standard for § 504 claims, dismissal of a § 501 claim on causation grounds would also warrant dismissal of the § 504 claim. Additionally, because an employee must establish disability in order to prevail under both § 501 and § 504, dismissal of one claim on disability grounds also warrants dismissal of the other claim.

argues that even when served with a set of interrogatories, Plaintiff failed to make any factual allegations showing that disability was a motivating factor in any adverse action. *Id.* Defendant has pointed out an absence of evidence showing that Plaintiff's disability was a motivating factor for the alleged adverse actions, and therefore has met his burden. *Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiff to identify evidence in the record creating a genuine issue of material fact that the alleged adverse actions were motivated by his disability. *See Vela*, 276 F.3d at 666. Plaintiff responds that before his spinal surgery he received only one negative memorandum for being late, but after the surgery he received no less than forty such memorandums. However, the sheer number of memorandums, without more, does not show that they were motivated by discriminatory animus. Plaintiff has failed to meet his burden and Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim on this basis as well.

**B.**     **Failure to Accommodate Claim**

Defendant also moves for summary judgment on any reasonable accommodation claim construable from Plaintiff's pleadings. (Mot. Br. at 8).

The Rehabilitation Act requires an agency "to make reasonable accommodation to the known physical or mental limitations" of a qualified employee "if the accommodation would not impose an undue hardship on the operations of its program." 29 C.F.R. § 1614.203(c)(1). An employer is required to show reasonable accommodations to the known physical or mental limitations of the employee only after the employee shows that (1) he has a disability; (2) he is a qualified individual; and (3) an adverse employment decision was made because of his disability. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999).

Defendant correctly points out, for reasons stated earlier, that Plaintiff has not met the first

prong of his discrimination claim.  Defendant argues that Plaintiff has not raised a genuine issue of material fact that he is disabled under the Rehabilitation Act.  Defendant has met his burden.  As discussed earlier, Plaintiff does not meet his burden and provide evidence sufficient for a reasonable jury to conclude that he is disabled.  Defendant is therefore entitled to summary judgment on any reasonable accommodation claim construable from Plaintiff's complaint.[7]

## C.    Retaliation Claim

Defendant moves for summary judgment on Plaintiff's claim that his work has been "subjected to closer scrutiny and or reprisal" after his EEO claim on grounds that he cannot establish the adverse-action element of his prima facie case for retaliation.  (Mot. Br. at 9-11).

Retaliation claims in Rehabilitation Act cases are analyzed under Title VII's well established burden-shifting paradigm.  A plaintiff must first establish a *prima facie* case of retaliation by showing that (1) he participated in activity protected by Title VII, (2) he suffered an adverse employment action, and (3) a causal connection existed between his protected activity and the adverse employment action.  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).  If the plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  If the employer meet its burden of production, Plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the employer's reason is not true, but is instead a pretext for retaliation, or (2) that the employer's reason, while true, is only one of the reasons for its conduct and another motivating factor is the plaintiff's

---

[7] Since summary judgment is required on this argument, the Court does not consider Defendant's other arguments.

protected activity.  *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Cothran v. Potter*, 2010 WL 1062564, at *5 (N.D. Tex. Mar. 22, 2010).

At issue here is the adverse-action element of Plaintiff's *prima facie* case.  "To constitute prohibited retaliation, an employment action must be materially adverse, one that would dissuade a reasonable worker from making or supporting a charge of discrimination."  *Stewart*, 586 F.3d at 331 9(citing *Burlington N. &Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2007)) (internal quotation marks omitted).  "The significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."  *Burlington N.*, 548 U.S. at 69; *See also Stewart*, 586 F.3d at 332-33.

Here, Plaintiff alleged in his complaint that after his EEO activity, his work has been "subjected to closer scrutiny and or reprisal."  When asked to explain this allegation, he stated that his annual evaluation score was lowered in 2008 from 4.8 to 3.6 on a 5.0 scale.  (D. App. at 53).  Defendant argues that contrary to his allegations, Plaintiff's score went up from 2007 to 2008.  He provides evidence that Plaintiff received actual performance scores of 3.0, 3.6, and 3.8 for the years 2006-2007, 2007-2008, and 2008-2009 respectively, and argues that his 2007-2008 score was raised to 4.8 only in settlement of a grievance and did not reflect his actual performance.  (*See* Mot. Br. at 10-11, citing D. App. at 57, 61, 67; Reply at 3-6).  Defendant further argues that the three scores translated into "fully successful" and "exceeds fully successful" and were not such as to "dissuade a reasonable worker from making or supporting a charge of discrimination."  (Mot. Br. at 10-11).  Defendant has provided evidence showing that given the particular circumstances, Plaintiff suffered no adverse effects from the evaluations and therefore suffered no adverse action.  Defendant has carried his initial summary judgment burden.

21

The burden now shifts to Plaintiff to provide evidence raising a genuine issue of material fact that the performance evaluations constituted an adverse action.  Plaintiff provides evidence that he received 4.2 and a 4.8 for the years 2003-2004 and 2004-2005, and that the scores translated into "exceeds fully successful" and "outstanding" respectively.  (*See* Resp. citing Ex. 8A-D).  He does not address Defendant's argument, however, that he still received "fully successful" and "exceeds fully successful" ratings in the following years.  The possibility of receiving such evaluations would not dissuade a reasonable person from supporting a charge of discrimination.  Plaintiff has failed to meet his burden, and summary judgment should be granted on his retaliation claim.

## V.  CONCLUSION

Defendant's motion to dismiss should be converted to a motion for summary judgment, and summary judgment should be **GRANTED** with respect to all of Plaintiff's claims.  The motion to strike evidence is hereby **GRANTED**.  The Clerk of the Court should be directed to substitute Timothy F. Geithner as Defendant.[8]

**SO RECOMMENDED** on this 4th day of May, 2010.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[8] The government seeks to substitute Geithner, who was sworn in as Secretary of the Treasury on January 26, 2009, for the prior Secretary as Defendant.  (*See* Mot. Br. at 1 n. 1).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

23